# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| James Benson, | : | Case No.  1:08CV1957 |
| | : | |
| Petitioner | : | Judge Kathleen M. O'Malley |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Keith Smith, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| | : | |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his conviction pursuant to a jury trial of one count of murder,[1] upon which he was sentenced to fifteen years to life imprisonment, with an additional three years for a firearm specification to be served prior to and consecutive with the main sentence, for a total of 18 years.

After the case was originally set for trial, on September 2, 2005 the petitioner filed a motion to suppress any statements he made while in custody on the grounds that such statements violated his *Miranda* rights.  The issues were fully briefed, trial began, and prior to voir dire a hearing was held on the motion to suppress, after which the trial court denied the motion on the record.

After the prosecution closed its case, the defense moved for mistrial, claiming that the

---

[1]Petitioner was acquitted of one count of aggravated murder.

1

testimony of several witnesses, including Ms. Schmucker, addressed evidence of other acts which were irrelevant and improperly admitted.  The court denied that motion, finding that the evidence cited by the defense was properly admitted and relevant to motive and to lack of accident.

The defense then moved for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure, arguing that the evidence was insufficient to support a conviction.  That motion was also denied.

The trial proceeded, with the defendant testifying on his own behalf as the sole defense witness, concluding with the petitioner's murder conviction.

The petitioner appealed his convictions to the Ohio Eighth District Court of Appeals, alleging the following ten assignments of error:

I.   The trial court denied the Defendant-Appellant Due Process of Law under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to suppress the alleged statements he made while in custody at the Maple Heights Jail and at the CPU.

II.  The Defendant-Appellant was denied effective assistance of counsel and  Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution for not having raised on his behalf a challenge to his unlawful arrest on April 30, 2005.

III. The Defendant-Appellant was denied effective assistance of counsel and  Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution when the trial court allowed into evidence opinion and hearsay testimony as to the nature of the relationship between the Defendant-Appellant and Kimberly Benson.

IV.  The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I,

2

Section 10 of the Ohio Constitution when the trial court denied the motions for acquittal.

V.   The Defendant-Appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution by being convicted against the manifest weight of the evidence to sustain a conviction for the crime of murder.

VI   The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to instruct the jury on the lesser-included offense of reckless homicide.

VII.  The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it improperly instructed the jury on the definition of "purpose."

VIII. The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it allowed cross-examination questioning regarding Sharray McGee and allowed her to testify as a rebuttal witness.

IX.   The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court overruled his motion for mistrial.

X.    The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court instructed the jury regarding the rebuttal witness Sharray McGee.

On March 1, 2007 the appellate court affirmed the judgment of the trial court.  In that opinion the

court summarized the facts of petitioner's case as follows:

On May 12, 2005, the Cuyahoga County Grand Jury indicted appellant on one count of aggravated murder, in violation of R.C. 2903.01(A), with a three-year firearm specification. Appellant pled not guilty to the indictment.

On September 2, 2005, appellant filed a motion to suppress any oral statements made by him. Additionally, on November 29, 2005, appellant filed an objection to the states's rule 404(B) notice.

The trial of this matter commenced on December 5, 2005. Prior to jury selection, the trial court held a hearing to address several motions filed by both the state and appellant. First, the court granted the state's motion for jury view, which requested for the jury to view the location where the crime occurred. Next, the trial court granted the state's motion to admit 404(B) evidence at the trial as it relates to past interactions between appellant and the victim. The court did not rule on the 404(B) motion as it relates to witnesses testifying to specific hearsay statements, and instead, would address those issues when the witnesses testify during the trial.

The court then proceeded to hear testimony and arguments regarding appellant's motion to suppress his oral statement given to police. During the hearing, the trial court heard the testimony of Chief Merlin Canter, Officer Gerald Sowul, Officer Woodward and appellant. Based upon the evidence presented during this hearing, the trial court denied appellant's motion to suppress.

The case then proceeded to opening statements. Subsequently, the state presented 33 individuals for examination. Their testimony revealed the following pertinent facts.

During the evening of April 29, 2005, Kimberly Benson ("the victim"), wife of appellant, called her niece, Patricia Harris, and asked to spend the night at her house. Harris consented and drove to the victim's home on Kenyon Drive in Maple Heights, Ohio, which she shared with appellant. Harris picked the victim up and the two returned to Harris's house for the evening. The victim was unable to drive herself to Harris's home because her vehicle was not functioning that evening.

The next time anyone heard from the victim was when her and

4

appellant's daughter, B Benson, telephoned the victim's cell phone while B was at her friend's house. While no specific person answered the phone, the phone was nevertheless picked up. On the other end, B heard her mother frightened and yelling, "Tony, get off of me." B next heard her father respond "no" and "take me somewhere." Cell phone records indicate that this call lasted 82 seconds and occurred approximately 3-4 minutes before the victim was shot.

After hearing the conversation between the victim and appellant, B attempted to telephone her mother four or five times, but was unsuccessful. Additionally, she telephoned her sister Avielle in California and told her about the telephone call between her mother and appellant.

Avielle attempted to contact her mother numerous times but was unsuccessful. Additionally, she contacted appellant but was unsuccessful until the fifth or sixth time. On that call, appellant answered the call but was out of breath. Avielle asked him where her mother was and he responded that she was getting her car fixed and was probably with her boyfriend.

Richard Woods, Frank Hamilton, Nicole English, Trisha Bryson and Tenika Philpotts testified that they witnessed a female and male fighting in a gold Dodge Intrepid that was stopped on South Miles Road on April 30, 2005. The female had one foot out the door of the vehicle and was screaming "help me, somebody help me." A male was restraining her by the shoulders. Shortly after, a gun shot rang out and the witnesses saw an African-American male emerge from the passenger side of the vehicle wearing a white jump suit and carrying a gun in his hand. The male fled the scene, ran through a field and jumped over a fence. After witnessing the male flee, the witnesses approached and saw a woman slumped in the driver's seat of the car. She was bleeding in the back right side of her head.

Officer Richard Tusig, a Cleveland police officer, testified that on April 30, 2005, he received a telephone call at 2:01 p.m. to respond to South Miles Road. He arrived at the location around 2:01 p.m. and saw a woman slumped over inside a gold Dodge Intrepid with her feet hanging out the door. Shortly thereafter, an ambulance arrived.

The victim was transported to MetroHealth Medical Center. Upon

arrival, she was not breathing, was unconscious, and unresponsive. Mark Malangoni, M.D., determined that the victim would not survive from the gun shot wound to her head.  After Dr. Malangoni received permission from appellant via telephone to remove the victim from life support, she finally passed at 7:45 p.m. on April 30, 2005.

Tara Christian, appellant's neighbor and friend, testified that appellant arrived at her home to see her husband around 2:30 p.m. on the day of the murder.

Chief Merlin Canter testified that he received a phone call from Sergeant Joseph Ehrbar on April 30, 2005.  Ehrbar told Canter that the victim had been shot and that the Cleveland police needed to speak with appellant regarding the shooting.  Due to Canter's friendship with appellant, Ehrbar requested Canter's assistance in facilitating a meeting with appellant.

Canter agreed and telephoned appellant's cell phone.  Appellant returned Canter's call and informed him that he wished to turn himself into police.  Canter picked appellant up at Ellacot Parkway in Warrensville Heights per appellant's request.  Appellant then voluntarily entered Canter's vehicle and sat in the front passenger seat.

Before arriving at the Maple Heights Police Department, appellant requested that they stop at his house.  Canter complied with the request in an effort to facilitate a peaceful surrender and arranged for all police to leave the house prior to their arrival.  When they arrived at the house, appellant went to his safe in the basement, retrieved an envelope that contained money, and handed it to his step-father, who had arrived at the home shortly after Canter and appellant.

Thereafter, Canter and appellant returned to the vehicle and proceeded to the Southgate Mall parking lot, where appellant had a brief conversation with some friends.

At 7:00 p.m., Canter and appellant arrived at the Maple Heights Police Department.  Appellant was immediately processed and booked.  Additionally, Sergeant Ehrbar contacted Lieutenant Holmes of the Cleveland police and informed him of appellant's surrender.  Lieutenant Holmes arranged for Officers Gerald Sowul and Robert Woodward to retrieve appellant from the Maple heights

6

police station and transport him to the jailhouse in downtown Cleveland.

Once officers Sowul and Woodward arrived at the Maple Heights station, they secured appellant in their vehicle. Thereafter, appellant was not free to leave the custody of the officers.

The officers arrived at the jailhouse in Cleveland and parked their vehicle in the garage. When they were transporting appellant to the elevator, he asked what he was under arrest for. Sowul responded "felonious assault." Sowul testified that Woodward then asked appellant "who was assaulted?" and appellant responded, "my wife." Woodward testified that he asked Sowul, not appellant, "who was assaulted?" and appellant voluntarily responded, "my wife."

After hearing appellant's statement, Sowul immediately stopped him and asked if he was aware of his rights, to which appellant responded that he was not. Therefore, Sowul informed appellant of his *Miranda* rights. Appellant responded that he knew and laughed. He then stated that he was with his wife and they were in the car having an argument when she took out a gun. They struggled over the gun, the gun went off, and she shot herself in the head.

When the officers and appellant reached the police station, the officers booked him. During that process, appellant continually stated that "he messed up" and "it's over now." After booking, Officer Sowul informed Homicide Detectives Hasan and Beaman of appellant's statements. The detectives ordered Officer Sowul to prepare a report of the statements.

During the investigation of the murder, detectives discovered a number of items in the victim's vehicle. They found a box of .380 caliber ammunition underneath the passenger's seat, one .380 caliber metal casing on the floor board of the passenger's seat, blood on the arm rest and side of the driver's seat. Additionally, underneath the driver's seat, detectives discovered a sandwich bag which contained a couple grams of marijuana, crack cocaine, a crack pipe, aluminum foil and white paper. Detectives also collected gunshot residue on the dashboard of the front passenger seat, headrest of the driver's seat, arm rest, steering wheel, passenger seat and headliner of vehicle. Finally, detectives retrieved half of the victim's cell phone.

7

No gunshot residue was found on the victim's or appellant's hands. Detective Darryl Johnson explained that the longer the time between the firing of the weapon and the time of the test could contribute to the lack of residue on the hands, as can washing the hands or rubbing them.

Casey Martin, a forensic scientist with the Cuyahoga County Coroner's office, testified that he performed DNA analysis on a blood stain found on the jean jacket appellant was wearing at the time of his arrest.  The test was inconclusive.  Additionally, he tested a stain discovered on a pair of appellant's docker pants.  The blood was determined not to be the victim's.  The blood found on the arm rest in the Dodge Intrepid was determined to be the victim's.  Finally, blood found on a white Foseco jump suit retrieved from appellant's home was determined to be nonhuman blood.

Kenneth Allen works with appellant at Foseco.  He testified that on the morning of April 30, 2005, appellant used Allen's cell phone to call the victim in an effort to disguise the fact that he was calling her because she was not answering his calls when she saw his number on her caller identification.  The victim did not answer the call from Allen's phone.

Allen further testified that he contacted appellant later that evening after he heard the victim was shot and died.  During that conversation, appellant told Allen he was in jail and his wife was dead.  Additionally, appellant said that he and his wife were going down the road and they got in an argument when she pulled out a gun.  They pulled over and wrestled for the gun.  Allen testified that appellant told him he got the gun from the victim and the gun went off.  Appellant then admitted to exiting the car and running from the scene because he was frightened.

Allen finally testified that a few weeks later, appellant returned to work and asked Allen what he told police.  Allen told him "what you told me" and appellant responded, "you're the only one that could put me in jail."

Henry Veverka, detective with the Cleveland Homicide Unit, testified he and his partner, James Metzler, conducted a search of appellant's home.  During the search of the house, Veverka saw a safe that is typically used to keep weapons.  Veverka was unable to open the safe, but shook it and determined that nothing was

contained in the safe.

Veverka also discovered a military utility box which is normally used to store ammunition.  In the box, Veverka discovered a number of loose live rifle slugs.

In the house, Veverka also found the victim's life insurance policy in plain view which appellant was a named beneficiary. Additionally, he found other ammunition in the bedroom.  He also retrieved two of appellant's paper pullover suits from Foseco in a chest of drawers in the basement.

Verena Schmucker testified that she had an affair with appellant. She further testified that during their affair, appellant asked Schmucker for her assistance in setting the victim up to be arrested. More specifically, appellant wanted Schmucker to call the police when the victim would leave a local tavern so that she would get a DUI.  Additionally, appellant would plant some crack cocaine in her purse.  Schmucker testified that she refused to help appellant in his plan.  Schmucker ended her relationship with appellant in February of 2005.

At the conclusion of Schmucker's testimony, the state then rested its case.  Thereafter, appellant moved for a mistrial, arguing that Verena Schmucker's "other acts" testimony was inadmissible pursuant to Evid.R. 404(B).  The state argued that the testimony went to motive and lack of accident of the murder.  Additionally, the plan to plant drugs on the victim was evidence of modus operandi.  The trial court agreed with the state's argument and denied appellant's motion for mistrial.

Thereafter, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion.

Appellant then took the stand on his own behalf.  Appellant testified that on April 30, 2005, he was scheduled to work at Foseco until 12:00 p.m., but left early after he received a page from his home alarm company.  Appellant explained that the company told him a window was broken at his home.  Therefore, appellant left work at 9:00 a.m. to tend to his house.

Appellant did not go directly home.  Instead, he attempted to pick up his daughter, B at her friend's house but there was no answer at the home.  He, therefore, went home.  He arrived home around

9

10:00 a.m.

Around 11:30 a.m. or 12:00 p.m., Patricia Harris dropped the victim off at their home.  When the victim arrived, she had a backpack with her.  She placed it on the table, went downstairs, retrieved a large amount from the safe, and came back upstairs.

Appellant and the victim then tended to her vehicle which was not functioning the prior evening.  On this occasion, however, the vehicle immediately started.  Appellant asked the victim about the money and she stated that she owed it to somebody.  She then left in her car around 12:15 p.m.  He claims he never saw his wife thereafter.

Shortly after the victim left, Mark Benson, the appellant's nephew, appeared.  The two went to his parent's house to do some work in the yard.  Then his nephew dropped appellant off at Skorchers, a sports bar.  While at Skorchers, appellant had only one beer and was there for only 20 minutes.  He then got a ride from an unknown patron at Skorchers to another tavern, Wings.

Appellant arrived at Wings about 1:00 p.m.  At 2:00 p.m., his nephew picked him up and drove him to his house.  When he approached his home, he saw police vehicles, and instead, had his nephew drop him off at his friend's house nearby, the Christian's home.  While there he discussed the problems he was having with the victim.

Thereafter, Chief Canter called and left a message on appellant's voice mail.  Once he received that message, appellant phoned Canter and informed him he wished to turn himself into the police.  He met Canter in the Ellacott apartment complex in Warrensville Heights.

First Canter drove him to his house so that he could retrieve money and give it to his step-father.  Canter then took him to the Southgate mall parking lot to meet some friends.  Canter finally transported appellant to the Maple Heights Police Department shortly before 7:00 p.m.

When appellant arrived at the police station, he was booked.  Appellant denied ever speaking with Kenneth Allen while at the Maple Heights police station.

10

Cleveland police officers then picked appellant up from the Maple Heights police department. Appellant testified that he responded to Officer Woodward's question of "who was assaulted?" by stating, "they said I shot my wife." Appellant denied that he responded, "my wife." Additionally, appellant maintains that Officer Sowul never informed appellant of his *Miranda* rights, nor did appellant tell the officers that his wife pulled a gun, that he and his wife struggled over that gun, or that the gun went off and she shot herself.

Appellant admitted to having an affair with Schmucker, but denied ever asking her to assist him in framing his wife for a DUI or drug possession.

Appellant also conceded that he left disturbing messages on his wife's voice mail the night before her murder. In those messages, he admits he called his wife such names as a whore and lesbian.

Appellant denied asking Sharray McGee to falsely testify during trial that she ran into him at Wings around 1:30 p.m. on the day of the murder.

Finally, appellant does not know who killed his wife, denies shooting her, and denies being with his wife at 2:00 p.m. on April 30, 2005.

After testifying, appellant rested his case and made another motion for mistrial, this time contesting the state's ability to cross-examine appellant about Sharray McGee. The court denied appellant's motion for mistrial. Additionally, appellant made another Crim.R. 29 motion for acquittal. The trial court denied this motion as well.

The state then requested the ability to present the testimony of Sharray McGee as a rebuttal witness. The trial court heard arguments by both the state and appellant regarding this matter. Additionally, the trial court conducted a voir dire of the witness. Considering the parties' arguments and voir dire, the trial court allowed Sharray McGee to testify as a rebuttal witness.

Sharray McGee testified that one week before the trial, appellant asked her to falsely testify at trial that, on the day of the murder, she ran into him at the Wings tavern around 1:30 p.m. and he bought her a drink. He also wanted her to testify that he then left Wings around 1:50 p.m. and she left 20 minutes later. McGee declined

appellant's request, and instead, informed the authorities of his proposition.

Following Ms. McGee's testimony, appellant moved again for a mistrial. The trial court denied appellant's request. Finally, the state and appellant presented their closing arguments.

On May 3, 2007 petitioner appealed the appellate court ruling to the Ohio Supreme Court, alleging the following nine propositions of law:

**Proposition of Law No. I:** Warrantless arrests of suspects cannot be justified because it could lead to the potential coerced and/or erroneous collection of evidence; and counsel is ineffective for failing to raise the issue in a pre-trial motion.

**Proposition of Law No. II:** Numerous witnesses testifying as to normally inadmissible hearsay evidence regarding the nature of a relationship between an accused just prior to the victim's death in a murder case is unfairly prejudicial and violative of the defendant's Due Process right to a fair trial. Ohio R. Evid. 404(B).

**Proposition of Law No. III:** When the State of Ohio presents evidence in its case in chief that would support an instruction on a lesser-included offense, a trial court must give such instruction.

**Proposition of Law No. IV:** A trial court denies a defendant-appellant his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it denies his Motion for Judgment of Acquittal as the charge of aggravated murder ("purpose and prior conviction and design") and with insufficient evidence presented in the prosecution's case in chief.

**Proposition of Law No. V:** A defendant is denied his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when he is convicted of murder against the manifest weight of the evidence.

**Proposition of Law No. VI:** A defendant is denied his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when "purpose" is defined in such a way as to eliminate all

12

other forms of lesser *mens rea* theories provided in the Ohio Criminal Code.

**Proposition of Law No. VII:** A defendant is denied his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it allows a prosecutor to cross-examine the defendant on a subject that lacks a foundation regarding a witness and subsequently allows the witness to testify as a rebuttal, despite the fact that the defendant denies any conversation with that witness.

**Proposition of Law No. VIII:** A trial court denies a defendant-appellant his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it denies his Motion for a Mistrial after the trial court allows several, repetitive and cumulative testimony regarding the relationship of the victim and the defendant just prior to her death.

**Proposition of Law No. IX:** A defendant is denied his Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court errs in instructing the jury with regard to a rebuttal witness.

On August 29, 2007 the supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Nearly a year later, on July 31, 2008, the petitioner, now acting pro se, filed with the Ohio Eighth District a motion to reopen his appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure, arguing that he had been denied the effective assistance of appellate counsel in the following particulars:

1.  Appellate counsel was ineffective for failing to raise the issue of trial counsel's failure to move for the dismissal of juror No. 5 and/or move for a mistrial based on juror misconduct during deliberations.  Violating Appellant's U.S. Const. 6th and 14th Amends. and Ohio Const., Article I, §10 and 16.

2.  Appellate counsel was ineffective for failing to raise the issue that trial counsel was ineffective for forcing Appellant to

13

defend himself against charges of felony murder not brought by the grand jury.  Violating Appellant's U.S. Const. Amends. 5th, 6th and 14th and Ohio Const., Article I, §2, 10 and 16.

3.  Ineffective assistance of appellate counsel for failing to raise the issue of ineffective assistance of trial court counsel's failure to object to prosecutor misconduct violating Appellant's U.S. Constitution 6th and 14th Amendments and Article I, §10 and 16 of the Ohio Const.

On September 12, 2008, the appellate court denied the application as having been untimely filed, after determining that petitioner had failed to demonstrate good cause for the delay in filing.

On October 21, 2008, the petitioner appealed to the state supreme court the denial of his Rule 26(B) application to reopen, alleging the same three propositions of law he had asserted to the lower appellate court.  On December 31, 2008, the supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

While his Rule 26(B) application to reopen was pending before the state appellate court, on August 13, 2008 the petitioner filed the instant petition, in which he raised the following nine claims for relief:

A.  **GROUND ONE**[2] (located on page 5 of the petition): Warrantless arrest of suspects cannot be justified because it could lead to the potential coerced and/or erroneous collection of evidence; and counsel is ineffective for failing to raise the issue in a pre-trial motion.

A.  **GROUND ONE** (located in the attachment): The trial court denied the Defendant-Appellant Due Process of Law under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to suppress the alleged statements he made while in custody at the Maple Heights Jail and at the CPU.

---

[2]For clarity's sake, from this point forward this Court will refer to this as "Ground One(A)," and to the following claim as "Ground One(B)."

**B.   GROUND TWO:** The Defendant-Appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution when the trial court allowed into evidence opinion and hearsay testimony as to the nature of the relationship between the Defendant-Appellant and Kimberly Benson.

**C.   GROUND THREE:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it failed to instruct the jury on the lesser-included offense of reckless homicide.

**D.   GROUND FOUR:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court denied the motions for acquittal.

**F.   GROUND FIVE:** The Defendant-Appellant was denied Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution by being convicted against the sufficiency of the evidence to sustain a conviction for the crime of murder.

**G.   GROUND SIX:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it improperly instructed the jury on the definition of "purpose."

**H.   GROUND SEVEN:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when it allowed cross-examination questioning regarding Sharray McGee and allowed her to testify as a rebuttal witness.

**I.   GROUND EIGHT:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution

and Article I, Section 10 of the Ohio Constitution when the trial court overruled his motion for mistrial.

**J.** **GROUND NINE:** The trial court denied Defendant-Appellant Due Process of Law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court instructed the jury regarding the rebuttal witness Sharray McGee.

Petitioner amended his petition to add the following claims for relief:

**K.** **GROUND TEN:** Appellate counsel was ineffective for failing to raise the issue of trial counsel's failure to move for the dismissal of juror No. 5 and/or move for a mistrial based on juror misconduct during deliberations. Violating Appellant's U.S. Constitution 6th and 14th Amendments and Ohio Constitution, Article I, Sections 10 and 16.

**L.** **GROUND ELEVEN:** Appellate counsel was ineffective for failing to raise the issue of trial court counsel's ineffective assistance for forcing appellant to defend against charges not brought by the grand jury. Violating appellant's U.S. Constitution 5th, 6th and 14th Amendments and Ohio Const., Article I, Sections 2, 10 and 16.

**M.** **GROUND TWELVE:** Ineffective assistance of appellate counsel for failing to raise the issue of trial counsel ineffective assistance for failure to object to prosecutor misconduct. Violating appellant's U.S. Constitution 6th and 14th Amendments and Ohio Constitution, Article I, Section 10.

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date. Lindh v. Murphy, 521 U.S. 320 (1997).[3]

The respondent asserts that petitioner's tenth through twelfth claims for relief have been

---

[3]There are no issues of untimeliness in this case.

16

procedurally defaulted by reason of the fact that they were only raised in petitioner's Rule 26(B) application to reopen his appeal.

The state court denied that application, holding in part as follows:

> Benson has filed with the clerk of this court an application for reopening. He asserts that he was denied the effective assistance of appellate counsel because appellate counsel did not assign as error that trial counsel was ineffective for: failing to move for dismissal of a juror or for mistrial due to juror misconduct during deliberations; forcing appellant to defend himself against charges of felony murder not brought by the grand jury; and failing to object to prosecutorial misconduct. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
>
> Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed *** within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B)(2)(b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
>
> This court's decision affirming applicant's conviction was journalized on March 19, 2007. The application was filed on July 31, 2008, clearly in excess of the ninety-day limit.
>
> The Supreme Court has upheld judgments denying applications for reopening solely on the basis that the application was not timely filed and the applicant failed to show "good cause for filing at a later time." App.R. 26(B)(1) . See, e.g., *State v. Gumm*, 103 Ohio St.3d 162, 2004 Ohio 4755, 814 N.E.2d 861; *State v. LaMar*, 102 Ohio St.3d 467, 2004 Ohio 3976, 812 N.E.2d 970. We need not, therefore, examine the merits of this application if Benson failed to demonstrate good cause for failing to file a timely application.
>
> Benson states in his memorandum in support of his application for reopening that, due to budget cutbacks "several of the institutions [sic] normal operations have been stopped and/or closed for reasons of staff shortage, which includes the institutions [sic] law library, preventing this appellant from timely filing his application." Application for Reopening, at 1. Benson's statement does not,

17

however, provide a basis for concluding that he has demonstrated good cause for the untimely filing of his application. Rather, "it is well-established that limited access to legal materials or a library does not constitute good cause for the late filing of an application for reopening. *State v. Stearns* (Feb. 14, 2002), Cuyahoga App. No. 76513, 2002 Ohio App. LEXIS 770, at 4 (citations deleted)." *State v. Quiles*, Cuyahoga App. No. 84293, 2005 Ohio 388, reopening disallowed, 2006 Ohio, at 3 [Motion No. 372157, dated May 24, 2006], cited in *State v. DeMars* (Mar. 18, 1993), Cuyahoga App. No. 62148, 1993 Ohio App. LEXIS 1537, reopening disallowed, 2006 Ohio 3833, at P6, Motion No. 385801.

Benson's failure to demonstrate good cause is a sufficient basis for denying the application for reopening. See also: *State v. Collier* (June 11, 1987), Cuyahoga App. No. 51993, 1987 Ohio App. LEXIS 7430, reopening disallowed 2005 Ohio 5797, Motion No. 370333; *State v. Garcia* (July 8, 1999), Cuyahoga App. No. 74427, 19999 Ohio App. LEXIS 3228, reopening disallowed 2005 Ohio 5796, Motion No. 370916. As a consequence, applicant has not met the standard for reopening.

The Sixth Circuit, in Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986), delineated a four part approach on habeas corpus for determining whether a petitioner's claim is barred by the failure to observe a state procedural rule. First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply. Then the court must determine whether the state court enforced the sanction for failure to comply. If so, it must then be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring federal review. If all these questions are answered in the affirmative, the petitioner must satisfy the requirements set forth in Wainwright v. Sykes, 433 U.S. 72, 138 (1977) that he demonstrate cause for having failed to follow the procedural rule in question and that he was actually prejudiced by the alleged constitutional error. Greer v. Mitchell, 264 F.3d 663, 672-73 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002); Maupin v. Smith, supra at 138.

Turning to the present case and applying the Maupin factors, the petitioner failed to timely

18

file his Rule 26(B) application, the state court found that he failed to satisfy the requirement of providing good cause for his untimely filing, and such a finding of procedural bar has been deemed to be an adequate and independent basis for denying review in habeas corpus. Monzo v. Edwards, 281 F.3d 568, 578 (6th Cir. 2002). Accord, Rideau v. Russell, unreported, Case No. 08-3466, 2009 U.S.App. LEXIS 18895 (6th Cir. 2009) ("Whether one chooses September 1996 or the year 1998 as the starting point, [petitioner's] claim must fail because our precedents clearly establish that Rule 26(B) was an adequate and independent state ground when [petitioner] filed his motion on October 19, 2000."). Those questions having been answered in the affirmative, the petitioner must satisfy the cause and prejudice test of Wainwright.

Petitioner asserts the ineffective assistance of appellate counsel as cause for the untimely filing of his Rule 26(B) application and failure to provide good cause for the untimeliness.

Error or imprudent tactical decision by an otherwise competent counsel does not constitute cause for a procedural default. Murray v. Carrier, 477 U.S. 478 (1986). Only where counsel is constitutionally ineffective can his/her error be deemed "cause." Id. at 488-89. See, also, Lucas v. O'Dea, 179 F.3d 412, 419 (6th Cir. 1999). Before a claim of ineffective assistance of counsel can be cited as cause for a procedural default, however, it must "be presented to the state courts as an independent claim." Id. at 489.

> The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause--a question of federal law--without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that

19

underlies the exhaustion doctrine would be illserved by a rule that
allowed a federal district court "to upset a state court conviction
without an opportunity to the state courts to correct a constitutional
violation," . . . and that holds true whether an ineffective assistance
claim is asserted as cause for a procedural default or denominated
as an independent ground for habeas relief.

Id. (citation omitted).  Accord, Edwards v. Carpenter, 529 U.S. 446 (2000).

In the present case, in order for petitioner to be able to rely on this articulated instance of
ineffective assistance as constituting cause for his procedural default, he would have had to assert
to the state courts the independent claim of ineffective assistance of appellate counsel for failure
to timely file the Rule 26(B) application to reopen and to provide good cause for such failure,
which he failed to do.

As a consequence of the foregoing, petitioner's tenth through twelfth claims for relief have
been procedurally defaulted, and are subject to dismissal on that basis.

Turning to merits review of the remaining claims for relief, the role of a federal district
court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

(d) An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
not be granted with respect to *any claim that was adjudicated on
the merits in State court proceedings* unless the adjudication of
the claim—

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

20

(Italics added.)

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings; Williams v. Taylor, 529 U.S. 420 (2000), with the state court adjudication being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court];" and with the state court adjudication involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.  Even if the state court decision resulted in an incorrect application of federal law, if that decision is reasonable it will stand.  Id.  See, Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000).

In Ground One(A) the petitioner challenges his warrantless arrest, and the evidence derived therefrom, as having violated the Fourth Amendment to the United States Constitution.  He further alleges that his counsel's failure to challenge his arrest as unlawful constituted ineffective

assistance of counsel in violation of his constitutional rights.

Full and fair litigation by the state courts of a Fourth Amendment claim precludes federal habeas corpus review of that claim. Kuhlmann v. Wilson, 477 U.S. 436 (1986); Stone v. Powell, 428 U.S. 465, 494 (1976). See also, Machacek v. Hofbauer, 213 F.3d 947, 952 (6th Cir. 2000), cert. denied, 531 U.S. 1089 (2001) ("Petitioner's Fourth Amendment claim is not reviewable."); McQueen v. Scroggy, 99 F.3d 1302, 1332 (6th Cir. 1996), cert. denied, 117 S.Ct. 2422 (1997), overruled on other grounds, 392 F.3d 174, 182 (6th Cir. 2004) ("[I]t is well settled that McQueen is precluded from presenting a Fourth Amendment claim . . . in a habeas action."); Marsack v. Howes, 300 F.Supp.2d 483, 493 (E.Dist.Mich. 2004) ("[T]he limitation on review of Fourth Amendment claims imposed by the Supreme Court in *Stone v. Powell*,...precludes relief on the basis of that Amendment."). Accord, Mitchell v. Sheldon, Case No. 3:08CV2899, 2009 U.S.Dist. LEXIS 55600 (N.D.Ohio 2009)(J.Gaughan). Cf, Reedus v. Stegall, 79 Fed. Appx.93, 96 (6th Cir. October 14, 2003).

The foregoing limitation on review in habeas corpus proceedings of Fourth Amendment claims does not extend to prohibit claims of ineffective assistance of trial counsel, pursuant to the Sixth Amendment, which are premised upon counsel's alleged failure to proficiently litigate Fourth Amendment claims. Kimmelman v. Morrison, 477 U.S. 365, 382-83 (1986). In order to succeed with such a claim, a petitioner must establish the merits of the underlying Fourth Amendment claim, as well as demonstrate a reasonable probability that the outcome would have differed if the excludable evidence had not be admitted. Id. at 375.

The petitioner moved to suppress other evidence, but his counsel did not file a motion to suppress pertaining to evidence derived from his arrest, as summarized in part by the state

22

appellate court:

> In order to demonstrate ineffective counsel, a defendant must show, not only that his counsel's representation was deficient, but also that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, supra, at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, supra, at paragraph two of the syllabus; see, also, *Strickland*, supra, at 687.

> A defendant has the burden of proving ineffective assistance of counsel and there is a strong presumption that a properly licensed trial counsel rendered adequate assistance. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. As the Strickland Court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689; see, also *State v. Hamblin* (1988), 37 Ohio St.3d 153, 524 N.E.2d 476.

> In the instant matter, appellant argues that defense counsel was ineffective because he failed to challenge appellant's warrantless arrest and the evidence obtained therefrom. We find appellant's argument without merit.

> The Sixth Amendment's guarantee of assistance of counsel does not require trial counsel to file a motion to suppress in every case. *State v. Flors* (1987), 38 Ohio App.3d 133, 528 N.E.2d 950, citing *Kimmelman v. Morrison* (1986), 477 U.S. 365, 91 L.Ed.2d 305, 106 S.Ct. 2574. The burden is on the defendant-appellant to point to evidence in the record supporting suppression of evidence, "Where the record contains no evidence which would justify the filing of a motion to suppress, the appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion." *State v. Gibson* (1980), 69 Ohio App.2d 91, 95, 430 N.E.2d 954. Moreover, counsel is not required to perform a futile

act. *State v. Martin* (1983), 20 Ohio App.3d 172, 174, 4485 N.E.2d 717; *State v. Lodge*, Greene App. No. 2004 CA 43, 2005-Ohio-1908; *State v. Davis*, Butler App. No. CA2001-05-108, 2002-Ohio-865.

Here, appellant is unable to establish defense counsel's performance was ineffective because appellant has failed to establish that the warrantless arrest was contrary to law. The conditions under which a warrantless arrest may occur are set forth in R.C. 2953.04, which states:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

In the instant matter, it is clear that the officers had reasonable cause to believe appellant was guilty of the offense. The record supports the conclusion that appellant voluntarily surrendered himself to the Maple Heights police via Chief Canter. Thus, the Maple Heights police had reasonable grounds to detain appellant. Shortly thereafter, the Cleveland police briefly detained appellant long enough to transport him to the jailhouse downtown where they arrested appellant. As the foregoing facts establish that the officers performed a legal arrest pursuant to R.C. 2935.04, any challenge to the arrest and the evidence obtained therefrom would have been unavailing. Therefore, defense counsel was not ineffective for failing to file a futile motion to suppress. Appellant's second assignment of error is not well-taken.

This Court agrees with the state court holding that to the extent that petitioner's attorney opted not to raise this particular challenge that decision did not constitute ineffective assistance, in light of the fact that there was reasonable cause to arrest petitioner and to detain him as a consequence of his having voluntarily surrendered to police, rendering a motion to suppress futile. It follows that petitioner has failed to demonstrate that he was prejudiced by his attorney's failure to move to suppress evidence obtained consequent to a warrantless arrest. Accord, <u>Young v. Lafler</u>, Case No. 06-CV-10362, 2009 U.S.Dist. LEXIS 22578 (E.Dist.Mich. 2009); <u>Tate v. Booker</u>,

24

Case No. 06-CV-13156, 2008 U.S.Dist. LEXIS 42829 (E.Dist.Mich. 2008).  Absent that, there could have been no ineffective assistance based on a failure to challenge the arrest and the evidence derived therefrom.  This claim for relief, therefore, should be dismissed.

In Ground One(B), petitioner argues that the trial court violated his constitutional rights by denying his motion to suppress the statements he made while in custody at the Maple Heights Jail and made while he exited the squad car at the jail parking garage, the basis of the claim being that as he was not properly advised of his rights under Miranda v. Arizona, 384 U.S. 436, 478-79 (1966), statements against interest made by him while in custody should have been suppressed.

An individual in police custody must be warned prior to interrogation of his or her right to remain silent, that if statements are made they may be used against him or her, and that he or she has the right to counsel, either appointed or retained, so as to protect the individual's privilege against self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution.  Miranda v. Arizona, supra at 478-79.  Accord, Dickerson v. United States, 530 U.S. 428, 435 (2000); Stansbury v. California, 511 U.S. 318, 322 (1994); United States v. Myers, 123 F.3d 350, 359 (6th Cir. 1997).

*Miranda* rights are subject to waiver, provided that it is rendered voluntarily, knowingly, and intelligently, without coercion and with full cognizance of the consequences of such waiver as well as the attributes of the right being waived.  Moran v. Burbine, 475 U.S. 412, 421 (1986); Edwards v. Arizona, 451 U.S. 477, 482 (1981); Machacek v. Hofbauer, 213 F.3d 947, 954 (6th Cir. 2000).  The totality of the circumstances surrounding such waiver is considered in order to determine whether a valid waiver has occurred, see, Moran, supra at 421; Abela v. Martin, 380 F.3d 915, 928 (6th Cir. 2004), Seymour v. Walker, 224 F.3d 542, 553-554 (6th Cir. 2000), which

25

necessitates consideration of the following factors:

> (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) the suspect's maturity; (6) the suspect's education; (7) the suspect's physical condition and mental health; and (8) whether the suspect was advised of *Miranda* rights.

Abela, supra at 928 (citing Withrow v. Williams, 507 U.S. 680, 693-694 (1993)).  The first element, police coercion, has been deemed as a pre-requisite to finding that a confession consequent to waiver is involuntary.  Ibid.

A valid waiver can exist absent a signed waiver form.  North Carolina v. Butler, 441 U.S. 369, 375-376 (1979); Seymour, supra at 554.

In the context of a federal habeas corpus court reviewing a state court determination as to validity of waiver of *Miranda* rights, it must be determined whether the state court's finding that petitioner's waiver was valid was contrary to, or an unreasonable application of, clearly established federal law, warranting relief in federal habeas corpus.  In making that determination it has been held that "Subsidiary factual questions in determining the voluntariness of a statement to police...are entitled to the presumption of correctness accorded to state court findings of fact." Miller v. Fenton, 474 U.S. 104, 112 (1985).  One such subsidiary factual question is whether a criminal defendant understood the reading of *Miranda* rights:

> Whether a defendant understood his *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent.  Thus, on federal habeas review, a federal court has to presume that the state court's factual finding that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence.  See *Valdez v. Ward*, 219 F.3d 12222, 1231 (10th Cir. 2000).  Williams has not provided any further evidence, clear and convincing or otherwise, to rebut the findings by the Michigan Court of Appeals that he understood the rights that were

26

> read to him.  That court did not err in concluding the Williams
> knowingly, intelligently, and voluntarily waived his *Miranda* rights
> prior to giving his statement.

<u>Williams v. Jones</u>, 117 Fed.Appx. 406, 411-412 (6th Cir. 2004) (unpublished).  <u>See</u> <u>also</u>, <u>Lango v.</u>

<u>Lafler</u>, Case No. 06-CV-12228, 2009 U.S.Dist. LEXIS 8455, *9 (E.D.Mich. 2009);  <u>Terry v. Bock</u>,

208 F.Supp.2d 780, 789 (E.D.Mich. 2002).

Turning to the present case, petitioner argues that he had not been informed of his *Miranda*

rights prior to being asked "whom he assaulted," and that "statements made after being <u>Mirandized</u>

were not made with a full and complete acknowledgment of the rights he would be waiving if he

spoke to police."

The state appellate court rejected petitioner's challenge to the denial of his motion to

suppress based on failure to properly advise him of his *Miranda* rights, holding in pertinent part:

> Within this assignment of error, appellant argues that the trial court
> erred in failing to suppress his response of "my wife" to Officer
> Woodward's question, "who did he assault?"  In asserting this
> proposition, appellant maintains that he was not properly advised
> of his rights under Miranda prior to the question.  For the following
> reasons, we find appellant's argument meritless.
>
> With regard to procedure, we note that this court set forth the
> standard of review for a trial court's denial of a motion to suppress
> in State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172,
> which states:
>
> "In a motion to suppress, the trial court assumes the role of trier of
> fact and is in the best position to resolve questions of fact and
> evaluate witness credibility.  *State v. Clay* (1973), 34 Ohio St.2d
> 250, 63 Ohio Op.2d 391, 298 N.E.2d 137.  A reviewing court is
> bound to accept those findings of fact if supported by competent,
> credible evidence. See *State v. Schiebel* (1990), 55 Ohio St.3d 71,
> 564 N.E.2d 54.  However, without deference to the trial court's
> conclusion, it must be determined independently whether, as a
> matter of law, the facts meet the appropriate legal standard.  *State
> v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906."

In *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court set forth the guidelines for the admissibility into evidence of any statement given during the custodial interrogation of a suspect. *Miranda* requires that a suspect "be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that, if he cannot afford an attorney, one will be appointed for him prior to any questioning if he so desires." Id. at 479.

Appellant claims that at no time during his detention at the Maple Heights police station or before he was booked at the Cleveland police station was appellant informed of his constitutional rights under *Miranda*. Consequently, appellant argues, any statements he allegedly made to Officers Sowul and Woodward while he was in transport to the Cleveland police station are inadmissible.

In <u>State v. Jeffries</u> (Aug. 24, 2000) Cuyahoga App. No. 76905, we stated that:

"The prosecution bears the burden of proving by a preponderance of the evidence that the accused was advised of his four *Miranda* rights. *State v. Gumm* (1995), 73 Ohio St.3d 413, 429, 653 N.E.2d 253. However, the Supreme Court of the United States has stated that *Miranda* does not require a 'talismanic incantation' of the specific warnings. *California v. Prysock* (1981) 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696."

In the instant matter, Officer Sowul testified that, while in the garage of the Cleveland jailhouse, appellant asked what he was under arrest for, to which Officer Sowul responded, "felonious assault." Officer Sowul then testified that Officer Woodward then questioned appellant "who he assaulted?" and appellant responded, "my wife."

Officer Sowul immediately stopped appellant from speaking any further and asked whether he was aware of his rights. Appellant indicated that he was not. Therefore, Officer Sowul informed appellant of his rights under *Miranda*. Thereafter, appellant stated that he was with his wife and they were in the car having an argument when she took out a gun. The two struggled over the gun, at which point the gun went off, and she shot herself in the head. Thereafter the officers and appellant reached the police

28

station, the officers booked appellant.

During his testimony, Officer Woodward confirmed the testimony provided by Officer Sowul. Officer Woodward, however, testified that he did not question appellant about who he assaulted. Instead, he asked Officer Sowul "who was assaulted?," to which appellant responded, "my wife."

Appellant testified that he was never informed of his *Miranda* rights until he was booked at the Cleveland jailhouse. Additionally, appellant testified that when Officer Woodward asked appellant "who was assaulted?," appellant responded, "I am accused of shooting my wife" and not "my wife."

Reviewing this evidence in a light most favorable to the state, we find appellant's statements that he struggled with his wife over the gun and she shot herself admissible. The evidence establishes that Officer Sowul read appellant his rights pursuant to *Miranda* before appellant volunteered this information to the police. Accordingly, we find the trial court correctly denied appellant's motion to suppress in regard to this statement.

Additionally, we find appellant's response of "my wife" admissible as well. The United States Supreme Court has held that: "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Edwards* (1976), 49 Ohio St.2d 31, 40-41, 358 N.E.2d 105, vacated on other grounds in (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

In the case sub judice, there is no evidence indicating the police were interrogating appellant when he made the statement, "my wife." Appellant volunteered the statement after Officer Woodward's first, and only, inquiry into the subject. Given the lack of interrogation, appellant's argument that his statement was inadmissible is without merit.

Furthermore, assuming arguendo that appellant's response of "my wife" was improperly admitted, such an error would have been harmless. Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights

29

shall be disregarded." To find an error harmless, an appellate court must be able to declare a belief that the error was harmless beyond a reasonable doubt. *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 358 N.E.2d 623, vacated on other grounds in (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. An appellate court may overlook an error where the other admissible evidence, standing alone, constitutes "overwhelming" proof of guilt. *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61, 605 N.E.2d 46.

Here, there was overwhelming proof of appellant's guilt despite the alleged inadmissible statement. Appellant's response of "my wife" was no more incriminating than the statements made after he was informed of his *Miranda* rights. In other words, even without appellant's statement of "my wife," the remaining evidence (including appellant's statements that he was in a fight with his wife, struggled over the gun, and she shot herself), standing alone, constitute overwhelming proof of appellant's guilt. Accordingly, assuming arguendo that the trial court erred in allowing appellant's response of "my wife," such an error would nevertheless be harmless error. Appellant's first assignment of error is overruled.

In the present case, accepting as true Officer Sowul's testimony that Officer Woodward asked petitioner who he had assaulted prior to informing him of his *Miranda* rights, a proposition which was not fully corroborated by Officer Woodward, this Court agrees that the statement was duplicative of, and no more incriminating than, statements made by petitioner after having been fully informed of his *Miranda* rights. This Court cannot find that the state court's determination that petitioner was properly informed of his *Miranda* rights, that petitioner offered his statements voluntarily and without coercion, and that even if he answered a question by responding "my wife" prior to having been informed of his *Miranda* rights, such error was harmless and did not affect the outcome of the trial, was contrary to, or an unreasonable application of, clearly established federal law, warranting relief in federal habeas corpus. Consequently, this claim for relief is

without merit.

Petitioner's second and seventh claims for relief will be considered together as they each challenge the admission of evidence at trial as having violated his constitutional rights.  On a related issue, petitioner alleges in his eighth claim for relief that the trial court violated his constitutional rights by denying his motion for mistrial based upon the admission of evidence of his tumultuous relationship with the victim, his wife Kimberly Benson.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are matters of state law not cognizable in habeas corpus.  Byrd v. Collins, 209 F.3d 486, 528 (6th Cir. 2000), cert. denied, 531 U.S. 1082 (2001).  Stated differently, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  Roe v. Baker, 316 F.3d 557, 567 (6th Cir.  2002).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters.  Seymour v. Walker, 224 F.3d 542 (6th Cir. 2000), cert. denied, 532 U.S. 989 (2001).   In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  Sanders v. Freeman, 221 F.3d 846 (6th Cir. 2000).

The United States Supreme Court has held that in order for the exclusion of evidence to be deemed unconstitutional such exclusion must have "significantly undermined fundamental elements

31

of the accused's defense." United State v. Scheffer, 523 U.S. 303, 315 (1998).  The Sixth Circuit Court of Appeals upheld the denial of a petition for writ of habeas corpus premised upon an allegation of unconstitutional exclusion of evidence and opined that the foregoing ruling by the Supreme Court should not be read to mean that a petitioner's constitutional rights are violated whenever a state court has excluded evidence believed by petitioner to have been at the heart of the defense, but rather stands for the proposition that such constitutional rights are violated "when a state court excludes important evidence on the basis of an arbitrary, mechanistic, or per se rule, or one that is disproportionate to the purposes it is designed to serve." Alley v. Bell, 307 F.3d 380, 393 (6th Cir. 2002).  Where a state court makes an individual assessment as to the evidence and makes a ruling which complies with the foregoing, such as the court did in Alley v. Bell, id. at 396, then the writ will not be granted.

More specifically, the Sixth Circuit Court of Appeals has held that there is no clearly established precedent of the United States Supreme Court holding that admission of prior bad acts evidence is violative of constitutional rights, so that admission of such evidence would not, in turn, warrant relief in federal habeas corpus.  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003); Harmon v. Wilson, Case No. 5:06CV2059, 2007 U.S.Dist. LEXIS 91763, at *13 (N.D.Ohio 2007)(J.O'Malley).

In his second claim for relief the petitioner challenges the trial court's having permitted the testimony of various witnesses regarding his negative relationship with the victim, his wife Kimberly Benson.  The state appellate court denied petitioner's challenge to the admission of such evidence, holding in pertinent part:

Appellant's third assignment of error states:

"The defendant-appellant was denied Due Process of Law under the

32

Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution when the trial court allowed into evidence opinion and hearsay testimony as to the nature of the relationship between the defendant-appellant and Kimberly Benson."

Here, appellant argues that, over counsel's objection, the trial court violated Evid.R. 404(B) by allowing the following witnesses to testify as to appellant's and the victim's hostile relationship: B. Benson, Avielle Benson, Cindy Golden, Patricia Harris, Jeanne Scaccianoce and Verena Schmucker.

Evidence Rule 404(B) states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

R.C. §2945.59 states:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Because Evid.R. 404(B) and R.C. §2945.59, codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus.

In *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, the Ohio Supreme court held the admission of evidence is addressed to the broad discretion of the trial court, and a reviewing court shall not disturb evidentiary decisions in the absence of abuse of discretion resulting in material prejudice.  The Supreme Court

33

has repeatedly held the term abuse of discretion implies the trial court's attitude is unreasonable, arbitrary, or unconscionable, see, e.g., *State v. Adams* (1980), 62 Ohio St.2d 151, 404 N.E.2d 144.

The trial court allowed several witnesses to testify as to the tumultuous marriage of appellant and the victim. This testimony provided the jury with appellant's feelings towards the victim leading up to her murder. Such evidence was offered to establish appellant's motive or intent in killing the victim and was not offered to prove appellant's character and that he acted in conformity therewith. Additionally, such evidence was presented to rebut appellant's statements to Officer Sowul and Woodward and Kenneth Allen that the shooting was only an accident. Furthermore, we cannot say that the unfair prejudice of the evidence substantially outweighed its probative value. Therefore, the trial court did not abuse its discretion in allowing testimony regarding the marriage of appellant and the victim. Appellant's third assignment of error is overruled.

After deciding that the evidence of the troubled marriage between petitioner and his wife was

properly admitted, the court held that the trial court did not err in denying the motion for mistrial

based thereon, holding in part:

Trial courts enjoy broad discretion in ruling on motions for mistrial. *State v. Iacona*, 93 Ohio St.3d 83, 100, 2001-Ohio-1292, 752 N.E.2d 937; *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." Id.; see, also, *United States v. Scott* (1978), 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing

*Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.

Here, appellant contends that the trial court erred in not granting appellant's motion for mistrial based upon the admission of evidence regarding the hostile tumultuous marriage between appellant and the victim. In the third assignment of error we concluded this evidence was admissible to prove motive, intent and lack of accident. In light of our decision in this regard, we find that the trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's ninth assignment of error is without merit.

In his seventh claim for relief petitioner challenges the trial court's having permitted cross-examination of petitioner as to his whereabouts at the time of the crime, and as to his attempt to establish an alibi. Petitioner also challenges the fact that after his cross-examination, the prosecution offered the testimony of Ms. Sharray McGee, who stated in rebuttal that petitioner had urged her to falsely claim that he had been with her at the time of the shooting. The state appellate court rejected petitioner's arguments that the admission of such evidence violated his constitutional rights, holding in pertinent part:

With this assignment of error, appellant first argues that the trial court erred in allowing the state to cross-examine appellant regarding his alleged request of Sharray McGee to falsely testify that she was with him at the time of shooting. We disagree.

"The scope of cross-examination and the admissibility of evidence during cross-examination are matters which rest in the sound discretion of the trial judge. Thus, when the trial court determines that certain evidence will be admitted or excluded from trial, it is well established that the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion." *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (citations omitted.) An examiner may ask a question during cross-examination if there is a good faith belief that a factual predicate for the question exists. *State v. Boyd* (May 29, 1992), Cuyahoga App. No. 60639, citing *State v. Gillard* (1998), 40 Ohio St.3d 226, 533 N.E.2d 272, paragraph two of the syllabus; see, also,

35

*State v. King* (Nov. 14, 1996), Cuyahoga App. No. 68726.

Here, appellant testified that he was at the Wings Tavern during the time of the murder. Appellant offered no other evidence other than his own alleged alibi. Furthermore, he did not file a notice of alibi prior to the trial of the matter. Therefore, the state questioned appellant whether he asked McGee to falsely testify at trial that she was with him at the Wings Tavern at the time of the murder. Appellant denied seeking false testimony. As a result, the prosecutor presented Sharray McGee as a rebuttal witness. She contradicted appellant and stated that he attempted to illicit [sic] her false testimony regarding his alibi. Accordingly, the state had a good faith basis to cross examine appellant regarding the fabrication of his alibi because of these contradictions.

Also within this assignment of error, appellant maintains the trial court erred in allowing the rebuttal testimony of Sharray McGee. In *State v. McNeil*, 83 Ohio St.3d 438, 446, 1998-Ohio-293, 700 N.E.2d 596, the Supreme Court of Ohio stated:

"Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence. It is within the trial court's discretion to determine what evidence is admissible as proper rebuttal."

As previously stated, appellant testified that he was at the Wings Tavern at the time of the murder. Furthermore, he denied asking McGee to falsely testify that she was with him at the time of the murder. Accordingly, the state presented the testimony of McGee because it clearly supported an inference that appellant fabricated his alibi as well as rebutted appellant's denial of soliciting McGee to testify as to a false alibi. Accordingly, the trial court did not abuse its decision in allowing the rebuttal testimony of McGee. Appellant's eighth assignment of error is without merit.

The foregoing rulings of the state appellate court are premised entirely on application of state law, as well as on factual determinations entitled to a presumption of correctness which can only be rebutted by clear and convincing evidence. Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998); McQueen v. Scroggy, supra at 1310. Nothing in those rulings was contrary to rulings of the United

36

State Supreme Court on a similar question of law, nor did the state courts decide the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. Consequently, there is nothing in those rulings which would lead this Court to find that there has been an infringement of a right guaranteed by the United States Constitution. That being so, the appellate court's affirmance of the trial court's denial of a motion for mistrial premised thereon would not call for relief in habeas corpus.  Petitioner's second, seventh and eighth claims for relief, therefore, are without merit.

Petitioner's third, sixth and ninth claims for relief will be considered together as they each challenge the instructions of law given by the trial court to the jury.

Issues regarding jury instructions are normally considered to be matters of state law not cognizable in federal habeas corpus.  Brazzell v. Smith, unreported, Case No. 98-1757, 1999 U.S. App. LEXIS 32248, *9 (6th Cir. December 7, 1999), citing Henderson v. Kibbe, 431 U.S. 145 (1977); Herrington v. Edwards, unreported, Case No. 97-3542, 1999 U.S.App. LEXIS 1220, *18-19 (6th Cir. January 26, 1999), citing numerous cases.  Accord, Mitzel v. Tate, 59 F.Supp.2d 705, 719 (N.D.Ohio 1999)(Judge Economus), affirmed, 267 F.3d 524 (6th Cir. 2001), citing Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988) and Eberhardt v. Bordenkircher, 605 F.2d 275, 276 (6th Cir. 1979).  In order to amount to a constitutional violation the challenged jury instruction must have "infected the accused's trial to such a degree as to constitute a clear violation of due process." Estelle v. McGuire, 502 U.S. 62, 72 (1991), quoting Cupp v. Naughton, 414 U.S. 141, 147 (1973).  Accord, Brazzell v. Smith, supra at *9 and Herrington v. Edwards, supra.  If an instruction is ambiguous (but perhaps not erroneous) a due process violation occurs only if it is determined that there is a "`reasonable likelihood that the jury has applied the challenged

instruction in a way' that violates the Constitution." <u>Estelle v. McGuire</u>, <u>supra</u> at 73, n.4 (quoting <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990). <u>Accord</u>, <u>Brazzell v. Smith</u>, <u>supra</u> at *9 and <u>Herrington v. Edwards</u>, <u>supra</u> at *19. In that regard, in determining whether habeas corpus relief is warranted the emphasis must be upon the effect of any error on the jury, as opposed to sufficiency of the evidence. <u>Herrington v. Edwards</u>, <u>supra</u>, citing <u>Kotteakos v. United States</u>, 328 U.S. 750, 755, 763-65, 767, 775-76 (1946).

Absent proof of an erroneous instruction, petitioner cannot meet the overall burden of showing that the state court ruling was either contrary to or involved an unreasonable application of federal law.[4]

Petitioner claims in his third claim for relief that the trial court improperly failed to include a jury instruction on the lesser-included offense of reckless homicide. In his sixth claim he asserts that the trial court improperly failed to instruct the jury that the use of a deadly weapon could be done negligently or recklessly, as well as purposefully. The state appellate court rejected these arguments, holding in pertinent part:

> Appellant alleges the trial court erred by failing to instruct the jury on the lesser included offense of "reckless homicide." Initially, we note that appellant failed to raise this issue before the trial court and has therefore waived all but plain error.
>
> Pursuant to Crim.R. 52(B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error,

---

[4]It is only when such an error is shown that it is necessary to engage in harmless error analysis. <u>Brazzell v. Smith</u>, <u>supra</u>, citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993) and <u>Gilliam v. Mitchell</u>, 179 F.3d 990, 995 (6th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1120 (2000). See, <u>Neder v. United States</u>, 527 U.S. 1 (1999).

the outcome of the trial would have clearly been otherwise. *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894; *State v. Phillips*, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.

Regarding the inclusion of jury instructions on a lesser included offense, this court has previously held that reckless homicide under R.C. 2903.041 is a lesser included offense of murder in violation of R.C. 2903.02. *State v. Agosto*, Cuyahoga App.No. 87283, 2006-Ohio-5011, citing *State v. Jones*, Cuyahoga App. No. 80737, 2002-Ohio-6045. However, even though an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 216, 533 N.E.2d 286, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89, 107 L.Ed.2d 54; *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311.

In the instant matter, we do not find that the jury could have reasonably acquitted appellant of murder while finding him guilty of reckless homicide. The only evidence introduced at the trial indicating reckless behavior were appellant's own self-serving statements to Kenneth Allen and Officers Sowul and Woodward that appellant struggled with his wife, the gun went off, and the victim accidentally shot herself in the head. "Even where the defendant offers some evidence through his own testimony supporting a lesser-included offense, he is still not entitled to an instruction on that offense if the totality of the evidence does not reasonably support an acquittal on the greater offense and a conviction on the lesser offense." *State v. Neely* (2005), 161 Ohio App.3d 99, 110, 2005-Ohio-23422, 249 N.E.2d 718, quoting *State v. McCurdy*, Hamilton App. No. C-020808, 2003-Ohio-5518.

The totality of the evidence does not reasonably support an acquittal on the greater offenses of aggravated murder and murder and a conviction on the lesser included offense of reckless homicide. Several witnesses testified that they saw the victim arguing with appellant before she was shot. She screamed for help and attempted to flee the vehicle. Appellant, however, physically restrained her from leaving. Also, B Benson testified that she heard the victim plea [sic] with appellant to get off her and appellant denied her requests. Also notable is the fact the victim was shot in the back of the head contradicting any evidence of a struggle between the victim and appellant over the gun and an accidental

39

shooting. Moreover, evidence was presented that appellant changed into a white jump suit before the shooting, brought a gun with him and planted drugs in the victim's vehicle. Finally, an instruction of reckless homicide would contradict appellant's own testimony that he did not shoot his wife, he was not at the scene of the incident, and that he never told the officers and Kenneth Allen that a struggle ensued and the gun accidentally went off. Accordingly, an instruction on reckless homicide was not warranted. Appellant's sixth assignment of error is without merit.

There is nothing in the foregoing to indicate that the trial court's instructions to the jury were erroneous, particularly since the only evidence of reckless, as opposed to purposeful behavior, was the petitioner's own self-serving testimony, which was weak in comparison to the eye witness testimony describing purposeful actions, including a physical struggle between the petitioner and the victim, with the petitioner restraining the victim, the victim's screams and cries for help, a gunshot, then petitioner fleeing the scene. Furthermore, the petitioner's testimony that he did not shoot his wife and that he never said there was a struggle after which the gun accidentally fired, also provided no reason for an instruction as to recklessness.

A related argument was raised in petitioner's sixth assignment of error, in which he alleges that the trial court improperly instructed the jury too narrowly on the definition of "purpose," making it so that the jurors could not find that use of a deadly weapon could have been done negligently or recklessly. The state appellate court rejected petitioner's arguments, finding in part:

In his seventh assignment of error, appellant asserts that the trial judge improperly instructed the jury on "purpose" by adding to the definition additional means to provide for criminal culpability. The portion of the court's instruction to the jury that appellant complains of states as follows:

"If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be, but is not required to be, inferred from the use of the weapon. The inference, if made, is not conclusive."

40

Appellant argues that the instruction eliminates the possibility that the jury would find the act was done negligently or recklessly. First, we note that the instruction mirrors that found in 4 Ohio Jury Instructions (2006) 120, Section 503.01(E). Additionally, the instruction is nearly identical to that approved in *State v. Stallings* (2000), 89 Ohio St.3d 280, 291, 2000-Ohio-164, 731 N.E.2d 159. In that case, the jury instruction on the definition of "purpose" read:

"The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence. If a wound is inflicted upon a person with a deadly weapon in the manner calculated to destroy life or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon. The inference is not conclusive and purpose is determined from the facts and circumstances in evidence." Id. at 291.

The court found the instruction valid and stated:

"The foregoing instruction accurately reflects the law and is consistent with our prior decisions. The court said 'inferred,' not 'presumed,' and the word 'may' is permissive, not mandatory. Further, the court specifically instructed that any such 'inference is not conclusive.' Defendant's general objection to the instruction lacks merit." Id. at 291-292, citations omitted.

The instruction in the instant matter is nearly identical to that used in *Stallings*, supra. As in *Stallings*, the instruction in this case said "inferred" and not "presumed," used the word "may," and instructed that any such "inference is not conclusive." Accordingly, we find the trial court properly instructed the jury on the definition of "purpose." Appellant's seventh assignment of error is overruled.

For similar reasons, there is nothing in the foregoing to indicate that the trial court's instructions to the jury were erroneous, particularly since there was negligible evidence of recklessness, and eyewitness testimony of physical struggle and restraint between the petitioner and the screaming, pleading victim.

In his ninth claim for relief the petitioner challenges the trial court's instruction to the jury

41

on their consideration of the rebuttal testimony of Ms. Sharray McGee, who stated that the petitioner had tried to convince her to testify falsely that he was with her at the time of the shooting.  The state appellate court rejected petitioner's argument on this issue, finding in part:

> Here, the trial court instructed the jury regarding McGee's testimony as follows:
>
> "The testimony of Sharray McGee is known in the law as rebuttal testimony.  Such testimony may not be considered by you as proof of any of the essential elements of the charge of aggravated murder or murder.  It may only be used by you on the issue of the credibility of witness– of witnesses as to whether the Defendant was at another location at the time of the homicide.  Ms. McGee is subject to the same credibility consideration as all other witnesses."
>
> Appellant argues that this instruction relieved the state's burden in proving all the essential elements of the crime as well as the identity of the perpetrator of the crime.  In asserting this proposition, appellant first argues that the instruction allowed the jury to infer that if they believed McGee's testimony, they could assume appellant committed the crime.  The trial court clearly instructed the jury that McGee's testimony, "may not be considered by you as proof of any of the essential elements of the charge of aggravated murder or murder."  Accordingly, this argument is without merit.
>
> Appellant also argues that the instruction permitted the jury to conclude that if they believed McGee's testimony, they were to conclude appellant was at the location of the murder at the time of the crime.  In asserting this proposition, appellant clearly ignores the instruction regarding alibis that immediately proceeds the court's instruction regarding McGee's testimony.  There, the court instructed the jury as follows:
>
> "If the evidence fails to establish that the Defendant was elsewhere, such failure does not create an inference that the Defendant was present at the time when, and at the place where, the offense may have been committed.  If, after consideration of the evidence of alibi, along with all the evidence, you are not convinced beyond a reasonable doubt that the Defendant was present at the time in question, you must return a verdict of not guilty."

> Therefore, we find appellant's argument without merit.  His tenth
> assignment of error is overruled.

Again, there is nothing in the foregoing demonstrating error in the trial court's instructions to the jury, particularly since the rebuttal testimony was admitted for the limited purpose of addressing petitioner's prior inconsistent statement, and the trial court gave a limiting instruction to the jury cautioning them that they were not permitted to rely on the rebuttal testimony as proof of the essential elements of the crime or as proof that if he was not where his alibi indicated he would be located, then he was at the scene of the crime.

Absent evidence of error in the trial court's instructions to the jury, petitioner has failed to meet his burden of showing that the state court ruling was either contrary to or involved an unreasonable application of federal law.  It follows that petitioner's third, sixth and ninth claims for relief must fail.

Petitioner's fourth and fifth claims for relief will be considered together, as they each challenge the evidence relied upon to convict petitioner at trial.

In his fourth claim, he argues that the trial court erroneously denied his motion for judgment of acquittal, an argument which the state appellate court analyzed as a sufficiency of the evidence claim.

In his fifth claim for relief petitioner asserts that his conviction was based on insufficient evidence to convict him of aggravated murder.  This claim, however, was addressed by the state courts as his conviction having been against the manifest weight of evidence, a question of state law which does not raise a question of violation of a federal constitutional right.  Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).  Were it not for the fact that sufficiency of the evidence was addressed in the context of challenging the denial of his

motion for judgment of acquittal, the issue would have been defaulted.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  Herrera v. Collins, 506 U.S. 390, 401-402 (1993);  Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part as follows:

> Within this assignment of error, appellant maintains that the trial court erred in not granting appellant's motion for acquittal because none of the witnesses identified appellant as the person who shot the victim, nor did the state present any forensic evidence linking appellant to the shooting.  We disagree and find that sufficient evidence existed establishing appellant as the perpetrator of the

44

crime.

Motions for judgments of acquittal are governed by Crim.R. 29(A) which states that a trial court "shall order the entry of a judgment of acquittal *** if the evidence is insufficient to sustain a conviction of such offense or offenses."

A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.  In reviewing for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction.  Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.  The motion "should be granted only where reasonable minds could not fail to find reasonable doubt."  *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394.

Viewing the evidence in the light most favorable to the state, we find that the state presented sufficient evidence that appellant was the one that committed murder in violation of R.C. 2903.02 by purposely causing the death of the victim.  First and foremost, we note that appellant turned himself in to the police as testified by Chief Canter.  Additionally, appellant's daughter, B testified that she telephoned the victim's cell phone and heard the victim yelling at appellant seconds before the murder.  Detectives found half of the victim's cell phone in the vehicle after her death.  Also, numerous witnesses at the scene testified that they witnessed an African-American male wearing a white jump suit flee the scene of the shooting with a gun in his hand.  During the search of appellant's home, detectives discovered two white jump suits provided by Foseco. Moreover, Kenneth Allen testified that during the night of the murder, appellant told Allen that appellant and the victim were in a vehicle arguing and that after the shooting he was scared and ran away.  Furthermore, Officers Sowul and Woodward testified that, after being informed of his Miranda rights, appellant stated that he and his wife were arguing, a struggle ensued, the victim had a gun, she shot herself in the head, and he ran from the scene. Finally, Sharray McGee testified that appellant attempted to illicit her to provide a false alibi for the time of the murder.  The

45

> foregoing evidence sufficiently establishes that appellant was the perpetrator of the crime.    Accordingly, appellant's fourth assignment of error is without merit.

The state appellate court found the evidence sufficient to prove the elements of the crimes charged.   In so doing, the state appellate ruling, which relied entirely on state authorities, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That being so, petitioner's fourth and fifth claims for relief are without merit.

Petitioner's tenth through twelfth claims for relief having been procedurally defaulted, and his first through ninth claims having failed on the merits, in light of all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is, therefore, recommended that the petition be dismissed without further proceedings.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:    December 7, 2009

# OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the

specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).